IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LESTER W. STOLARCZYK, Independent )
Executor of the Estate of REBECCA M. )
STOLARCZYK, Deceased, )
                                     )
              Plaintiff, )
                                     )
           v. )           No. 03 C 8709
                                     )
                                     )           Judge Mark Filip
SENATOR INTERNATIONAL )
FREIGHT FORWARDING, LLC, )
                                     )
            Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lester Stolarczyk ("Plaintiff") is suing, on behalf of the estate of Rebecca Stolarczyk ("Stolarczyk"), Senator International Freight Forwarding, LLC ("Defendant" or "Senator"), for allegedly unlawfully terminating Stolarczyk and failing to offer her a reasonable accommodation for her alleged disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. (D.E. 24 (Am. Compl.).) The case is before the Court on Defendant's motion for summary judgment ("Motion"). (D.E. 27.) For the reasons stated below, the Motion is granted.

**I.    Background**

    A.    Preliminary Issues

The relevant facts are taken from Defendant's Local Rule 56.1 ("L.R. 56.1") statement of facts and exhibits ("Def. SF"), Plaintiff's response to Defendant's statement of facts ("Pl. Resp. to SF"), Plaintiff's L.R. 56.1 statement of additional facts ("Pl. SAF"), and Defendant's response to Plaintiff's statement of facts ("Def. Resp. to SAF"). As is the practice in this district, the

Court only considers those facts or additional facts that are presented in compliance with Local Rule 56.1 ("L.R. 56.1"). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance" with L.R. 56.1. *See Bordelon v. Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).

When denying a movant's factual allegations, "a general denial is insufficient." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Rather, "the nonmovant must cite specific evidentiary materials justifying the denial." *Id.*; *see also id.* (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying denial, is equivalent to admission). In deciding a summary judgment motion, a court may consider, along with deposition testimony and other material discussed in Federal Rule of Civil Procedure 56(c) and 56(e), "any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (internal quotations omitted). A court must disregard, however, evidence that constitutes inadmissible hearsay. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 874 n.3 (7th Cir. 2005) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996)); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial . . . except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed . . . provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live.").

Here, Senator argues that most of Plaintiff's responses to its statements of fact, as well as

2

various of Plaintiff's statements of additional fact, are supported only by inadmissible hearsay. In particular, Senator objects to the use of Stolarczyk's EEOC charge (D.E. 33, Ex. 3) and to notes apparently taken by an EEOC investigator that document statements made by Stolarczyk during an interview (*id.*, Ex. 4). (*See* Def. Resp. ¶¶ 1, 2, 4, 5; D.E. 35 at 2-5.) Plaintiff is using these documents for the truth of the matters asserted in them to argue, for example, that Stolarczyk was terminated by Senator rather than, as other evidence reflects, that she was not.

Defendant argues that these documents do not fall within any of the exceptions to the generally applicable prohibition on hearsay contained in the Federal Rules of Evidence. In a supplemental brief ordered by the Court regarding these evidentiary issues (*see* D.E. 37), Plaintiff does not dispute that Ms. Stolarczyk unfortunately died during the course of this litigation (and prior to any deposition) and therefore cannot testify at any trial. Plaintiff nonetheless argues that the EEOC charge meets the requisite guarantees of trustworthiness to be admitted under the residual exception to the hearsay rule, *see* Fed. R. Evid. 807, and that the EEOC investigator's notes are admissible as factual findings resulting from an investigation authorized by law, *see* Fed. R. Evid. 803(8)(C). As explained below, the Court agrees with Senator that the EEOC charge and notes of the interview with Stolarczyk constitute inadmissible hearsay that is not properly considered in the summary judgment analysis, given the fact that Ms. Stolarczyk would be unavailable as a witness at trial and was never deposed in this case.

1.     The EEOC Investigator's Notes

Plaintiff argues that the EEOC investigator's handwritten notes concerning Ms. Stolarczyk's statements are admissible as substantive evidence pursuant to Federal Rule of Evidence 803(8)(C). (*See* D.E. 38 at 5-6.) This argument is respectfully rejected.

3

Rule 803(8)(C) excepts from the general hearsay bar "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

To begin, it is clear from a review of the proffered investigator's notes that they cannot fairly be characterized as "factual findings" resulting from an investigation made pursuant to authority granted by law. Instead, a review of the notes (*see* D.E. 33, Ex. 4) makes clear that they are instead selective portions of notes concerning statements made by Ms. Stolarczyk during an interview with an EEOC investigator. (*See, e.g.*, D.E. 33, Ex. Akbar Aff. (affidavit of EEOC investigator stating that "I interviewed Rebecca Stolarczyk and compiled handwritten notes documenting the contents of the interview and what was said to me by her. My notes are attached hereto . . . .").) Indeed, Plaintiff refers to the notes as the "EEOC interview with Rebecca Stolarczyk." (*E.g.*, D.E. 33 at 2.)

Caselaw teaches, however, that hearsay statements are not exempted from the hearsay bar simply because they were related to a government officer or investigator. Thus, *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado*, 720 F. Supp. 1493 (D. Col. 1989) (Finesilver, C.J.), taught that while "[g]overnment accident investigation reports are generally admissible under the public records exception [of Rule 803(8)] . . . portions of those reports or exhibits may present other hearsay problems." *Id.* at 1497 (citation omitted). "Evidence reported in a government document is only admissible to the extent that the maker of [the] document could testify to that evidence were he present in court." *Id.* (citing *Denny v. Hutchinson Sales*

4

*Corp.*, 649 F.2d 816, 821 (10th Cir. 1981)); *accord Frazier v. Ind. Dept. of Labor*, No. IP01-

0198-C-T/G, 2003 WL 21254424, at *4 (S.D. Ind. Mar. 17, 2003) (excluding numerous

proffered matters from an EEOC file, including the EEOC charges and position statements of the

complainants, on grounds of, *inter alia*, the general hearsay prohibition and Rule 403) (citing

*Tulloss v. Near N. Montessori Sch.*, 776 F.2d 150, 154 (7th Cir. 1985)); *Lewis v. Velez*, 149

F.R.D. 474, 487 (S.D.N.Y. 1993) (noting that "Rule 803(8) does not circumvent the hearsay

rule" and noting that "[t]his principle excludes much of the Bryan Report [concerning a prison

incident], which is comprised largely of hearsay statements from correction officers involved in

the . . . incident."); *Budden v. United States*, 748 F. Supp. 1374, 1377-78 (D. Neb. 1990) (stating

that "[e]vidence reported in a government document is only admissible to the extent that the

maker of the document could testify to that evidence were he or she present in court," and

accordingly "disregard[ing]" "the reported statements" of numerous witnesses).[1]

These cases are consistent with Fed. R. Evid. 805, which requires that hearsay within

hearsay may be admitted only if there is an exception for each "layer" of hearsay. *See* Fed. R.

Evid. 805. Plaintiff has not offered any exception for the statements made by Stolarczyk

contained in the EEOC notes—which are the statements upon which Plaintiff would rely for their

truth to support Plaintiff's statements of fact and denials. Although the Court is sympathetic to

the Plaintiff in that Ms. Stolarczyk has unfortunately died, if the EEOC investigator were called

as a witness at trial, the Court could not allow that individual to relate rank hearsay in the form of

out-of-court statements made by an interested party and in reasonable anticipation of ensuing

---

[1] The district court judgment in *Budden* was vacated on other grounds in *Budden v. United States*, 963 F.2d 188 (8th Cir.1992).

litigation. As the Seventh Circuit has noted, "the EEOC file is a 'mish-mash of self-serving and hearsay statements and records; . . . justice requires that the testimony of witnesses be given in open court, under oath, and subject to cross-examination." *Tulloss*, 776 F.2d at 154 (internal quotation marks and citation omitted). The Court would follow the Seventh Circuit's admonition at any trial and exclude the hearsay, as nothing in the Plaintiff's invocation of Rule 803(8) would allow for the admission of the proffered out-of-court interview statements by Ms. Stolarczyk to the EEOC investigator.[2]

None of the three cases cited by Plaintiff alters the analysis above. *Chandler v. Roudebush*, 425 U.S. 840 (1976) (cited by Plaintiff in D.E. 33 at 5), simply noted in a footnote that prior "administrative findings" concerning employment discrimination cases involving federal employees could be admitted at trial. *Id.* at 864 n.39. But, as explained above, the interview notes that Plaintiff proffers are not "administrative findings," they are just shorthand notes of statements that Ms. Stolarczyk made before her death, offered for the truth of those out-of-court assertions. Similarly, *Beech Aircraft v. Rainey*, 488 U.S. 153 (1988), addressed the question of whether Rule 803(8)(C)'s exception to the hearsay prohibition "for public investigatory reports containing 'factual findings,' extends to conclusions and opinions contained in such reports." *Id.* at 156. Again, the proffered interview notes are not public investigatory reports, nor do they contain "factual findings." Finally, to the extent Plaintiff offers *Young v.*

---

[2] While it is possible that the EEOC somewhere made internal "findings" concerning this case, Plaintiff does not offer any such documents or evidence, and instead only proffers the selected interview notes. The Court notes that the EEOC often (perhaps typically) resists production of internal deliberative or evaluative materials under an invocation of privilege. *See, e.g., Lang v. Kohl's Food Stores, Inc.*, 186 F.R.D. 534, 535 (W.D. Wis. 1998) (Crabb, J.) (sustaining deliberative process objection by the EEOC).

*James Green Mgmt. Inc.*, 327 F.3d 616 (7th Cir. 2003),[3] that case affirmed the exclusion at trial

of administrative findings of discrimination by the EEOC. *Id.* at 624. In this case, Plaintiff has

not offered such findings, but rather has offered hearsay notes of out-of-court statements by Ms.

Stolarczyk. In addition, the appellants in that case did not even challenge the district court's

decision (mirrored by this Court here) not to admit the contents of the EEOC file. *See id.* at 624

& n.5 (noting that the appellants did not even challenge the district court's decision to exclude

raw evidence from the EEOC files, based on the "'general unreliability of these files in

general.'") (quoting district court).

For the reasons stated above, the interview notes of out-of-court statements made by Ms.

Stolarczyk will not be considered in this summary judgment proceeding.

2.    Ms. Stolarczyk's EEOC Charge

Plaintiff also seeks to rely on Ms. Stolarczyk's EEOC charge that she submitted when

initiating the EEOC proceedings. Plaintiff contends that this EEOC charge should be exempted

from the general prohibition against hearsay evidence under Fed. R. Evid. 807, the residual

exception to the hearsay bar.[4]

If a statement not covered by the hearsay exceptions in Rules 803 or 804 has "equivalent

---

[3] In Plaintiff's filing, Plaintiff cited "*Young & Mays v. Glen Management* 372 F.3d 616, 623 (7th Cir. 2003)." (D.E. 33 at 5.) An initial attempt at retrieving the case electronically revealed that the case corresponding to the federal reporter cite is *GTE Corp. v. Allendale Mut. Ins. Co.*, 372 F.3d 598 (3d Cir. 2004), which does not relate to the issues at hand. Furthermore, a search for cases involving "Glen Management" revealed nothing material. Finally, additional searches uncovered *Young v. James Green Mgmt. Inc.*, 327 F.3d 616 (7th Cir. 2003), which appears to be the case Plaintiff offers.

[4] In 1997, the contents of former Rules 803(24) and 804(b)(5) were combined and transferred to a new Rule 807 to facilitate additions to Rules 803 and 804. No change in meaning was intended by the amendment. *See* Fed. R. Evid. 807, advisory committee's notes.

circumstantial guarantees of trustworthiness," Rule 807 allows a court to admit the statement if it determines "(A) the statement is offered as evidence of material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed. R. Evid. 807. Precedent teaches that "'[o]ut-of-court statements are generally inadmissible because they are *presumed to be unreliable.*'" *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1995) (quoting *United States v. Hooks*, 848 F.2d 785, 796 (7th Cir. 1988)) (emphasis added; analyzing former Rules 803(24) and 804(b)(5)). "Thus, the party wishing to introduce hearsay evidence must rebut the presumption of unreliability by appropriate proof of 'trustworthiness.'" *Id.* (internal quotation omitted). In addition to the presumption of unreliability afforded to hearsay statements, Plaintiff also faces the Seventh Circuit's repeated "emphasis on narrowly construing the residual provision," *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998) (citing *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996)), and the Seventh Circuit's teaching that such narrow construction is appropriate to prevent the residual exception "from becoming the exception that swallows the hearsay rule." *Id.* (citing *Sinclair*, 74 F.3d at 759); *accord, e.g.*, *NLRB v. United Sanitation Serv., Div. of Sanitas Serv. Corp.*, 737 F.2d 936, 941 (11th Cir. 1984) ("[U]nless application of [the predecessor to Rule 807] be limited to circumstances evidencing a clear basis of trustworthiness, exceptions to the rule against hearsay could swallow the rule.") (internal quotation omitted)).

In determining whether a statement is sufficiently reliable to qualify under the residual exception to the general hearsay prohibition, a court "should examine, among other factors: (1)

'the probable motivation of the declarant in making the statement;' (2) 'the circumstances under which it was made;' and (3) 'the knowledge and qualifications of the declarant.'" *Hall*, 165 F.3d at 1110 (quoting *Cook v. Hoppin*, 783 F.2d 684, 690-91 (7th Cir. 1986)). The Court also may appropriately consider, when exercising its informed discretion concerning admissibility, any other circumstances concerning the statement; no particular criterion is a necessary prerequisite. *See id.* at 1111 (discussing various possible other factors, including the character of the declarant for truthfulness and honesty, and whether the hearsay statement is corroborated).

After considering the statements in the EEOC charge, the Court respectfully declines the invitation to admit them under the residual hearsay exception. As stated before, these statements are presumed to be inadmissible. Precedent teaches that courts typically should not admit documents made in anticipation of litigation as they "lack sufficient guarantees of trustworthiness to be excerpted from the hearsay rule." *Moffett v. McCauley*, 724 F.2d 581, 584 n.1 (7th Cir. 1984) (citing *Palmer v. Hoffman*, 318 U.S. 109, 111 (1943)) (considering former Rule 803(24)); *see also U.S. v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993) ("[W]e adhere to the well-established rule that documents made in anticipation of litigation are inadmissible under the business records exception [to the general hearsay prohibition]."). The statements contained in the documents are favorable to Stolarczyk and to her alone, and she had substantial motivation, with all respect, to embellish, as she clearly appreciated that she was laying out her litigation position. To be sure, as Plaintiff highlights, the statements were given under a penalty of perjury, but Ms. Stolarczyk was never subject to cross-examination by anyone concerning the statements and there is nothing inherently trustworthy about the statements (indeed, precedent instructs that, based on the context they were made in anticipation of potential litigation, the

9

presumption is in favor of untrustworthiness). In sum, although at least some of the factors identified in precedent support potential admissibility (*e.g.*, the statements were made under oath, the testimony concerns a subject within the hearsay declarant's personal knowledge, the hearsay declarant never recanted her testimony), there are also substantial factors weighing against admissibility (*e.g.*, the witness was never subject to cross-examination, the hearsay declarant was an interested party, the statements were made in anticipation of potential litigation). Under the circumstances, the ordinary presumption in Seventh Circuit precedent against admission of hearsay statements under the residual exception controls. Or, put differently, Plaintiff has failed to rebut the applicable presumption of inadmissibility.

Plaintiff relies heavily on the fact that, given Stolarczyk's death after the instigation of the lawsuit, she is unavailable to testify as to the statements in the EEOC documents. While the Court agrees with Plaintiff that the EEOC documents constitute the only evidence available that gives Stolarczyk's version of events, they are not the only evidence available as to the events surrounding the end of her employment with Senator. (*See, e.g.*, D.E. 27 (Sedor Aff.).) Thus, the "clear necessity" which Plaintiff argues (D.E. 37 at 3) is only necessary given that the other evidence offered concerning the same events does not corroborate or support Stolarczyk's litigation position. Additionally, a witness's death is not enough to justify discarding the trustworthiness requirement of the residual hearsay exception. *See, e.g., United Sanitation Serv.*, 737 F.2d at 940-41 (reversing ALJ's decision to admit dead witness's self-serving affidavit because no "clear basis of trustworthiness" found). Indeed, Congress has specifically delineated circumstances for admission of evidence where a declarant is unavailable, *see* Fed. R. Evid. 803, so Stolarczyk's death cannot, alone, justify the use of hearsay evidence.

In this regard, the Court notes that the issue of a deceased witness is one that the law has addressed for many years. It is not irrelevant that the "dying declaration" exception to the hearsay rule—for the statements of a deceased witness made while under an apprehension of impeding death—has long been understood to be a relatively narrow one. *See, e.g., Carver v. United States*, 164 U.S. 694, 697 (1897) ("Dying declarations are a marked exception to the general rule that hearsay testimony is not admissible, and are received from the necessities of the case, and to prevent an entire failure of justice, as it frequently happens that no other witnesses to the homicide are present. . . . They are received only when the court is satisfied that the witness was fully aware of the fact that his recovery was impossible, and in this particular requirement the law is very stringent."); *accord, e.g., Pfeil v. Rogers* 757 F.2d 850, 860-61 (7th Cir. 1985) (excluding out-of-court statements of deceased witness related in affidavit where statements did not qualify as dying declarations). While the Court is not unsympathetic to the fact that Ms. Stolarczyk unfortunately has died, the rules of evidence have been created over many years and they, at least on balance, are generally seen as an essential part of the truth-finding process. Under the circumstances presented, the EEOC charge shall not be considered.[5]

> 3.    The Anastasia O'Donnell Undisclosed Witness Issue

Senator also objects to Plaintiff's statements of fact supported only by the affidavit testimony of Anastasia O'Donnell. Senator asserts that O'Donnell was not disclosed as a potential witness under Federal Rule of Civil Procedure 26(a).

Federal Rule of Civil Procedure 37(c)(1) states, "A party that without substantial

---

[5] As best the Court can tell, after Ms. Stolarczyk initiated EEOC proceedings, and after this lawsuit also was filed, neither Plaintiff nor Ms. Stolarczyk invoked Fed. R. Civ. P. 27 to attempt to secure Ms. Stolarczyk's testimony in admissible form for purposes of this lawsuit.

justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." The following factors guide the Court's decision whether to exclude evidence pursuant to Rule 27(c): "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003) (citing, *inter alia, Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir. 1995)). In particular, harmlessness may be proved by a showing that a witness was disclosed during discovery. *Weiland v. Linear Const., Ltd.*, No. 00-6172, 2002 WL 31307622, at *2 (N.D. Ill. Oct. 15, 2002). Plaintiff offers deposition testimony from Lester Stolarczyk in which Anastasia O'Donnell was identified as (1) Stolarczyk's daughter who (2) attended doctor's appointments with her. (*See* D.E. 39, Ex. C at 12, 17, 23, 39.) Defendant thus had notice that O'Donnell may have had information relevant to the case, and the Court declines to exclude her affidavit under Rule 39 because the failure to disclose O'Donnell in Plaintiff's Rule 26 disclosures was harmless.

B.      Facts[6]

Senator is in the business of transporting freight internationally by air or water. (Def. SF ¶ 3.) Stolarczyk was employed by Senator at its Mt. Prospect, Illinois, facility from May 15,

---

[6] The Court notes that many of Plaintiff's Statements of Additional Facts are supported by inadmissible or otherwise improper evidence and are thus not included in the recitation of the facts. (*See, e.g.,* Pl. SAF ¶¶ 1-2 (EEOC charge), 3 (inadmissible hearsay), 5 (EEOC notes), 8 (Sedor Dep. cited does not support statement).) Additionally, legal conclusions are not properly submitted as statements of fact. (*Id.* ¶ 11 (offering Sedor's answer to the question whether there was need to provide Stolarczyk with a reasonable accommodation).) *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001).

2002, until October 24, 2002. (*Id.* ¶ 4.) Karen Sedor, Senator's District Manager for its Chicago and Detroit area facilities, hired Stolarczyk to work for Senator as an ocean export coordinator and supervised her during her employment. (*Id.* ¶¶ 7, 8, 11.) Stolarczyk's duties were to book ocean freight, to receive phone calls relating thereto, to give quotes relating thereto, and to do the documentation required for ocean freight movement. (*Id.* ¶ 9.) It is undisputed that Stolarczyk's regular attendance was a central and critical part of her position. (*Id.* ¶ 10; Pl. Resp to SF ¶ 10 (admitting fact).)

Sedor first noticed that Stolarczyk was ill in late September and October 2002 because Stolarczyk was turning yellow. (Def. SF ¶ 12). Between late September and October 14, 2002, Stolarczyk took at least portions of occasional days off work to see a doctor with regard to her jaundice and discomfort. (*Id.* ¶ 12; Pl. Resp. to SF ¶ 12.) On or just prior to October 14, 2002, Stolarczyk told Sedor that she was not feeling well and did not feel up to continuing to work.[7] (Def. SF ¶ 14.) The last day Stolarczyk came to work to perform her job was October 14, 2002, and she never performed work for Senator after that date.[8] (*Id.* ¶¶ 15, 16.) On or about October

---

[7] Plaintiff attempts to dispute this statement of fact. In support of that denial, Plaintiff submits correspondence from Stolarczyk that was written by her at work on October 14, 2002. (Pl. Resp. to SF ¶ 14.) This evidence does not dispute the evidence that Stolarczyk told Sedor she was not feeling well enough to work, especially given Sedor's testimony that the last day Stolarczyk came to work to perform her job was October 14, 2002. (Def. SF ¶ 15.) Thus, the Court deems the statement admitted for lack of a denial supported by record evidence. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

[8] Plaintiff attempts to dispute these statements on the grounds that (1) they are not supported by documentary evidence; (2) Senator has admitted that it did not keep records of Stolarczyk's attendance, including in the month of October 2002; and (3) Stolarczyk was paid through October 30 or 31, 2002. (Pl. Resp. to SF ¶¶ 15, 16.) None of these issues creates a dispute of fact under Rule 56. Documentary evidence is not needed as long as the statement is supported by affidavit testimony of a witness of personal knowledge who could competently testify to the fact at trial. *See* Fed. R. Civ. P. 56(c). Sedor testified that she supervised

21, 2002, Sedor was advised by another Senator employee that Stolarczyk had been diagnosed with cancer. (*Id.*¶ 18.)

Plaintiff does not dispute that as of October 24, 2002, Stolarczyk knew that surgery was scheduled for her on or about November 8, 2002, and that she could not thereafter return to work before the end of January 2003. (Def. SF ¶ 19; Pl. Resp. to SF ¶ 19 (admitting fact).) On October 24, Stolarczyk came to Sedor's office without prior notice and told Sedor that (1) she had cancer and could not work; (2) she would have surgery in early November and then would be treated with chemotherapy and radiation; (3) she would be unable to work prior to the end of January 2003 when her doctor hoped that she would finish her treatment, but she did not know if she would be able to return to work at that time because her doctor had told her the treatment tended to make people ill for awhile thereafter; (4) she realized Sedor could not hold her job open for her under the circumstances and did not expect Sedor to do so; and (5) she hoped that she could get her job back if it happened to be open when she got better.[9] (Def. SF ¶ 20; Pl. SAF ¶ 9.)  Stolarczyk did not request a medical disability leave of absence during that meeting with

Stolarczyk at Senator (Def. SF ¶ 11), and Plaintiff offers no argument that Sedor could not competently testify concerning Stolarczyk's attendance. That Stolarczyk would have been paid beyond October 14 is not inconsistent with the statement that the last day she actually performed work for Senator was October 14. Thus, the Court deems the statement admitted for lack of a denial supported by record evidence. *See Malec*, 191 F.R.D. at 584.

[9] Plaintiff does not dispute (1) and (2). (Pl. Resp. to SF ¶ 20.) Plaintiff attempts to dispute (3) by offering a statement in a medical report by a doctor who examined Stolarczyk that, in the doctor's opinion, some individuals are able to work in an administrative capacity while undergoing chemotherapy and radiation treatments, depending on the disease, treatment, and physical state of the patient. (*Id.*) This evidence as to "some individuals" does not create a dispute as to whether Stolarczyk told Sedor that *she* might not be able to come back to work. Plaintiff also attempts to deny (4) and (5) by offering statements from Stolarczyk's EEOC charge that she was terminated. Thus, the statements in (3), (4), and (5) are deemed admitted for lack of a denial supported by appropriate record evidence. *See Malec*, 191 F.R.D. at 584.

Sedor or at any other time.[10] (Def. SF ¶ 21.) At the end of the meeting, Sedor told Stolarczyk that she should inform Sedor when she was well enough to return because Senator would do whatever it could for her. (*Id.*) Sedor did not terminate Stolarczyk.[11] (*Id.* ¶ 23.) Sedor considered Stolarczyk to have voluntarily resigned her employment with Senator.[12] (*Id.* ¶ 22.)

Sedor called Stolarczyk at home later on October 24, 2002, to tell her that Senator was going to continue to pay for her medical insurance until February 2003, and, at Stolarczyk's request, gave written confirmation of this to her on October 28, 2002. (Def. SF ¶ 24.) Senator continued to pay Stolarczyk's medical insurance until August 2003. (*Id.* ¶ 25.)

Stolarczyk was at her doctor's office or at the hospital on October 15, 17, 18, 19, and 23, 2002. (Def. SF ¶ 17.) After her meeting with Sedor, she was at her doctor's office or at the hospital on October 25 and 30 and November 4 and 6, 2002, before her surgery on November 8, 2002. (*Id.* ¶ 26.) Stolarczyk was treated with chemotherapy and radiation after her surgery,

---

[10] Plaintiff attempts to dispute that Stolarczyk did not request a leave of absence, but the denial is supported by Stolarczyk's EEOC charge and the EEOC investigator's notes only. As the Court discussed in detail, *supra*, the EEOC documents are not admissible evidence. Thus, the statement is deemed admitted for lack of a denial supported by admissible record evidence. *See Malec*, 191 F.R.D. at 584.

[11] Plaintiff attempts to dispute this statement by offering Stolarczyk's statement from her EEOC charge that she was terminated by Sedor. (Pl. Resp. ¶ 23.) As the Court discussed above, the EEOC charge is not admissible evidence. Thus, the statement is deemed admitted for lack of a denial supported by record evidence. *See Malec*, 191 F.R.D. at 584.

[12] Plaintiff attempts to dispute this statement by offering Stolarczyk's statement from her EEOC charge that she was terminated by Sedor. (Pl. Resp. ¶ 23.) As the Court discussed above, the EEOC charge is not admissible evidence. Thus, the statement is deemed admitted for lack of a denial supported by record evidence. *See Malec*, 191 F.R.D. at 584. Moreover, nothing about this particular statement—*i.e.*, as to what Sedor considered to have happened—is material to the bottom-line result, given that Plaintiff has pointed to no admissible record evidence of an adverse job action sufficient to discharge Plaintiff's threshold burden on that score.

which treatment ended in February 2003. (*Id.* ¶¶ 28, 29.) Stolarczyk's physician did not release Stolarczyk to work until March 2003. (*Id.* ¶ 30.) Sedor called Stolarczyk in mid-March 2003, and was told by Stolarczyk that she was not feeling well enough to return to work. (*Id.* ¶ 31.) Stolarczyk never informed Sedor that she was well enough to return to work.[13] (*Id.* ¶ 32.) The time off work required by Stolarczyk to undergo her surgery and follow-up treatment exceeded two months. (*Id.* ¶ 33.) In fact, Stolarczyk was unavailable to work from mid-October 2002 until at least mid-March 2003.[14] (*Id.* ¶ 34.)

Stolarczyk filed a charge with the EEOC on April 4, 2003, alleging that she had been discriminated against on the basis of her disability when Senator allegedly terminated her and failed to accommodate her disability. (Am. Compl., Ex. A.) The EEOC issued her a right to sue letter on September 23, 2003 (*id.*, Ex. C), and Stolarczyk filed her original complaint some ten weeks later on December 2, 2003 (D.E. 1). In the amended complaint filed after Stolarczyk's death, Plaintiff alleges that Senator violated Stolarczyk's rights under the ADA by terminating her because she had cancer and by failing to accommodate her need for time off work to undergo surgery and treatment. (Am. Compl. ¶¶ 22-29.)

---

[13] Plaintiff attempts to dispute this statement by offering Stolarczyk's statements from her EEOC charge and the EEOC investigator's notes that she was not allowed to return to work. (Pl. Resp. ¶ 32.) As the Court discussed above, the EEOC documents are not admissible evidence. Thus, the statement is deemed admitted for lack of a denial supported by record evidence. *See Malec*, 191 F.R.D. at 584.

[14] Plaintiff attempts to dispute this statement by offering Stolarczyk's statement from her EEOC charge that she anticipated returning to work at the end of January 2003. (Pl. Resp. ¶ 34.) As the Court discussed above, the EEOC charge is not admissible evidence. Thus, the statement is deemed admitted for lack of a denial supported by record evidence. *See Malec*, 191 F.R.D. at 584. In any event, what she anticipated does not create a dispute as to what actually occurred.

## II.    Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    Discussion

Plaintiff alleges that Stolarczyk was unlawfully discharged because of her disability and that Senator failed to make reasonable accommodations to her known disability. Section 12112(a) of the ADA prohibits, among other things, discrimination "against a qualified individual with a disability because of the disability of such individual in regard to . . . the discharge of employees." 42 U.S.C. § 12112(a); *accord Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004). It is also unlawful under the ADA for an employer to fail to make reasonable accommodations to the known physical or mental disabilities of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A); *accord Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 897 (7th Cir. 1999). Section 12111(8) defines a "qualified

17

individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *accord Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004). Section 12102(2) defines a disability, in relevant part, as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

To make out a *prima facie* case of discrimination under the ADA, Plaintiff must show that (1) Stolarczyk is disabled within the meaning of the ADA, (2) she was qualified to perform her essential job functions either with or without a reasonable accommodation, and (3) she suffered from an adverse employment action because of her disability. *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002) (citing *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669-70 (7th Cir. 2000)). The burden is on a plaintiff to show that the plaintiff can meet these requirements. *See Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 789-90 (7th Cir. 1999).

A.    Plaintiff Has Failed to Adduce Evidence that Stolarczyk Was Terminated

Based on the admissible record evidence in the case, summary judgment is warranted on the ground that Plaintiff has failed to adduce evidence that Stolarczyk suffered from an adverse employment action. The only evidence Plaintiff offered to support the contention that Stolarczyk was terminated by Senator, as opposed to not being discharged by Senator or Sedor, (*see* Def. SF ¶¶ 22, 23), are the excluded hearsay statements in Stolarczyk's EEOC charge and the statements that Stolarczyk apparently made to the EEOC investigator, as reflected in the notes of those

conversations (*see* Pl. SAF ¶¶ 1, 2). In contrast, the admissible record evidence establishes that

Ms. Stolarczyk went to the office of Ms. Sedor without prior notice in late October 2002 and

informed Sedor that Stolarczyk had cancer and would be unable to work prior to at least the end

of January 2003; at the meeting, Stolarczyk also stated that she realized Sedor could not hold her

job open for her under the circumstances and did not expect Sedor to do so. (Def. SF ¶ 20; Pl.

SAF ¶ 9.) Ms. Sedor did not discharge Ms. Stolarczyk (*Id.* ¶ 23), and Sedor considered Ms.

Stolarczyk to have voluntarily resigned. (*Id.* ¶ 22). Ms. Stolarczyk thereafter was unable to work

until mid-March 2003, at the earliest. (Def. SF ¶¶ 31, 34.)

Put simply, nothing in the admissible record evidence supports the idea of an involuntary

termination as opposed to a voluntary resignation. Precedent establishes that a voluntary

decision to cease employment is not an adverse employment action. *See Bean v. Wisc. Bell, Inc.*,

366 F.3d 451, 453 (7th Cir. 2004) ("[I]f she resigned, what is the adverse employment action of

which she is complaining?"); *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th

Cir. 1999) (voluntary demotion not adverse employment action).

Plaintiff also has not argued for, nor put forward evidence that would support a finding

of, an adverse employment action under a theory of constructive discharge. *See, e.g., Bean*, 366

F.3d at 454 ("[C]onstructive discharge, refers to the situation in which an employer precipitates

an employee's resignation by making the employee's working conditions unbearable.")

(collecting cases); *Simpson*, 196 F.3d at 877 (establishing constructive discharge requires a

showing that (1) working conditions "were so intolerable that a reasonable person would have

been compelled to resign," and (2) the conditions were intolerable because of unlawful

discrimination). Because Plaintiff has failed to satisfy Plaintiff's burden of adducing evidence

19

that Stolarczyk suffered from an adverse employment action, summary judgment is proper.

B.    Stolarczyk Was Not a "Qualified Individual With a Disability"

Even if Plaintiff had discharged the burden of providing admissible evidence of an adverse job action, summary judgment is proper for the independent reason that Stolarczyk was not a "qualified individual with a disability." To make this determination, the Court must see whether she was "qualified to perform the essential functions of the job either with or without reasonable accommodation." *Dvorak*, 289 F.3d at 483. This is the second prong of a *prima facie* case. *See id.* The determination as to whether the individual is a "qualified individual with a disability" must be made at the time of the putative adverse employment decision. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) (citation omitted); *Sutton v. Potter*, No. 02 C 2702, 2004 WL 603477, at *7 (N.D. Ill. March 22, 2004) (Leinenweber, J.) (citing *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998)).

Senator relies on *Byrne v. Avon Products, Inc.*, 328 F.3d 379 (7th Cir. 2003), for the proposition that an inability to work for an extended period of time (in that case, two months) means that a litigant cannot perform the job's essential functions and thus is not "qualified" within the meaning of the ADA. *Id.* at 381. In this regard, the Seventh Circuit has repeatedly found that plaintiffs with lengthy absences do not qualify for protection under the ADA because they cannot perform the essential functions of their jobs. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899-00 (7th Cir. 2000) (plaintiff could not perform essential function of regular and timely attendance where he missed 24 days in twelve months); *id.* ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job."); *accord, e.g.,*

20

*Byrne*, 328 F.3d at 381; *Amadio v. Ford Motor Co.* 238 F.3d 919, 927-28 (7th Cir. 2001).

According to precedent, this type of request to an employer is not a "reasonable accommodation" because the "sort of accommodation contemplated by the ADA is one that will allow the person to 'perform the essential functions of the employment position.'" *Id.*, 328 F.3d at 381 (quoting 42 U.S.C. § 12111(8)). While a certain amount of "time off may be an apt accommodation for intermittent conditions," the Seventh Circuit held in *Byrne* that an "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Id.*

Here, Stolarczyk worked her last day on October 14, 2002. (Def. SF ¶¶ 15, 16.) She informed Sedor on October 24, 2002, that she would be out until at least the end of January 2003. (Def. SF ¶ 20.) Thus, the evidence before the Court demonstrates that on the date Stolarczyk met with Sedor (assuming for the purposes of this discussion that she was terminated), October 24, 2002, Senator was faced with an employee who would be out of work for some two-and-a-half to three-and-a-half months (mid-October to sometime in January). Given that Plaintiff does not dispute that attendance was a "central and critical aspect" of Stolarczyk's position (Pl. Resp. to SF ¶ 10), the Court finds that, under the applicable precedent, an imminent absence of this length takes Stolarczyk out of the realm of protection of the ADA.[15] Because Plaintiff has failed to

---

[15] Plaintiff suggests that *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir. 2000), militates in favor of a different result. But *Pals* dealt with a materially different scenario: there was evidence in that case that a person had been able to temporarily replace the plaintiff and long-time employee during an absence, and as a result, it was possible that the plaintiff/absent worker's request to return to work gradually could be a reasonable accommodation. *See id.* at 498. In this case, there was no evidence of any readily available temporary replacement; instead, the undisputed evidence is that Stolarczyk's regular attendance was a "central and critical" (Def. SF ¶ 10) component of her job at the transportation facility and that, unfortunately, as a result of her cancer, she necessarily would be out for months at the least. (As events unfolded, she was unavailable, at a minimum, for some five months—from mid-October 2002 until mid-March 2003.)

establish that Stolarczyk was qualified to perform her essential job functions either with or without a reasonable accommodation, Plaintiff has failed to make out a *prima facie* case of discrimination, and summary judgment would be independently warranted on such basis.

    C.    Senator Did Not Fail to Reasonably Accommodate Stolarczyk's Disability

Plaintiff's claim that Senator failed to reasonably accommodate Stolarczyk's disability does not survive summary judgment. As discussed, *supra*, precedent teaches that a multi-month leave is not a reasonable accommodation under the ADA. *Compare Byrne*, 328 F.3d at 381 (leave of more than two months not reasonable) *with Haschmann v. Time Warner Entm't Co., L.P.*, 151 F.3d 591, 601 (7th Cir. 1998) (two to four week leave reasonable). Plaintiff has adduced no admissible evidence that Stolarczyk requested any accommodation, much less anything other than a multi-month leave. Indeed, unfortunately, it is hard to imagine what possible accommodation could have been given to Ms. Stolarczyk, given that it is undisputed that regular attendance was "a central and critical aspect of her position" (D.E. 32 (Pl. Resp. to SF) ¶ 10) and further undisputed that she was unable to work until mid-March 2003, at the earliest. (Def. SF ¶¶ 31, 34.) *Accord Kemerly v. Bi-County Servs., Inc.*, No. 1:00-CV-254, 2003 WL 22595802, at *14 n.22 (N.D. Ind. Oct. 7, 2003). Senator, of course, was free to keep her position open if it chose, but, as explained above, the ADA does not mandate such a step. Thus, summary judgment is proper on Plaintiff's claim that Senator failed to offer Stolarczyk a reasonable accommodation.

## IV.    Conclusion

For the reasons stated above, Senator's motion for summary judgment (D.E. 27) is granted.

So ordered.

_Mark Flip_
Mark Filip
United States District Judge
Northern District of Illinois

Date: _7-8-05_